## KEEN & WOOLF OIL CO. v. COMMISSIONER OF INTERNAL REVENUE.

### No. 5806.

Circuit Court of Appeals, Fifth Circuit.

April 14, 1931.

Robert A. Littleton, of Washington, D. C., for petitioner.

G. A. Youngquist, Asst. Atty. Gen., Sewall Key, J. Louis Monarch, and Helen R. Carloss, Sp. Assts. to Atty. Gen., and C. M. Charest, Gen. Counsel, Bureau of Internal Revenue, and A. H. Pierce, Sp. Atty., Bureau of Internal Revenue, both of Washington, D. C., for respondent.

Before BRYAN, SIBLEY, and HUTCHESON, Circuit Judges.

SIBLEY, Circuit Judge.

Petitioner, Keen & Woolf Oil Company, is a corporation from which an excess profits tax was due for its fiscal year ending May 31, 1920. The sole dispute is over the value to be given to one item of its invested capital, being oil leases for which the company at its organization on May 22, 1919, paid to Keen & Woolf, a partnership, 1,100 shares of its preferred stock at a par value of $110,-000, and its entire common stock, 30,000 shares of no par value, put at $90,000. The aggregate sum of $200,000 is agreed to be the fair market value of the leases on that date. But the decision of the Board of Tax Appeals was that the proper allowance for invested capital in the leases is not their value when petitioner acquired them, but $92,-118.74, their cost to the former owners, Keen & Woolf, because Keen & Woolf through the stock received for the leases continued to have an interest in and control over them of 50 per centum or more. The further pertinent facts are that, on the date of petitioner's organization immediately after the transaction with Keen & Woolf, petitioner made a contract with one Jester whereby he was to sell, or, on failing to sell by a fixed date, was to buy, 3,900 additional shares of preferred treasury stock, and, to aid him in doing this, by a separate agreement, Keen & Woolf offered to give a bonus of two or three shares of their common stock with each share of preferred stock sold for the company. Jester's first sale was of 92 shares on July 9, 1919. Until then no person held any stock except Keen & Woolf. By December 1, 1919, Jester's operations were completed. After that date Keen & Woolf held 1,100 shares of preferred stock and 16,500 shares of common stock, and other persons held 3,920 shares of preferred and 13,500

of common stock. The concurrence of three-fourths of the preferred stock was necessary to mortgage the fixed property of the corporation, but the preferred stock had no vote otherwise until after six consecutive defaults in payment of its dividends, or upon failure to comply with certain provisions touching the surplus fund. Ordinarily the entire control of the corporation was in the common stock.

The applicable statute is section 331 of the Revenue Act of 1918, 40 Stat. p. 1095. Since Keen & Woolf were not a corporation, and did not reorganize or consolidate their entire business in this transaction, but only changed the ownership of some of their property, we omit inapposite portions of the statute, and quote as applicable these words: "In the case of the * * * change of ownership of property, after March 3, 1917, if an interest or control in such * * * property of 50 per centum or more remains in the same persons, or any of them * * * if such previous owner was not a corporation, then the value of any asset so transferred or received shall be taken at its cost of acquisition (at the date when acquired by such previous owner) with proper allowance for depreciation," etc. Before this section was enacted there were efforts to evade the excess profits tax by devices for increasing invested capital. La Belle Iron Works v. United States, 256 U. S. 377, 41 S. Ct. 528, 65 L. Ed. 998. The object of the section was to prevent the swelling of the invested capital by including war-time inflations since March 3, 1917, on putting the ownership of property into a corporation if the real interest or control was not changed by more than 50 per centum. If one-half or more of either interest or control remained in the same persons or any of them, the transfer was to be considered as insufficient to alter the basis of valuation of the transferred property in this tax accounting. The excess profits tax was imposed only on corporations. Therefore transfers to them only are involved. The interest and control of 50 per centum or more which survives the transfer must include that of stockholders through their stock. This is a most obvious and the most usual way to retain interest and control over property transferred to a corporation. "Interest" refers to ownership, and may be retained either through preferred or common stock, and independently of voting power. "Control" refers to voting power. It may include pooling arrangements and voting trusts. Thus construing the statute, it is

plain that, at the time of the change of ownership of the leases, the transferors Keen & Woolf became the owners of every outstanding share of stock, both preferred and common, and so retained a 100 per centum interest and control of the transferred property. It is true that immediately afterwards arrangements were made to issue other stock, and to transfer part of theirs, but until this was accomplished weeks later they continued to be the sole stockholders. We think the character of the transfer of property under this statute is fixed at the time it occurs, and that it will not be changed by subsequent transfers of stock. Those who buy stock of the corporation afterwards take the corporate affairs in this, as in other respects, as they find them. The statue applies the restricted valuation: "*If* an interest or control of such property of fifty per cent. or more remains in the same persons," not *while* it so remains. But, if this interpretation be discarded, the result is the same, because after all stock transfers were completed on December 1, 1919, Keen & Woolf still had more than 50 per cent. control in owning 16,500 shares of the common stock out of a total of 30,000 shares, and this continued throughout the taxable year, no default occurring that would transfer voting power to the preferred stock. The transferred property must therefore, in estimating invested capital of the petitioner, be put at the same valuation as was given it in the hands of Keen & Woolf before transfer.

Petition denied.