## BAY CITY FUEL CO. v. UNITED STATES.
### No. L–214.

Court of Claims.
Nov. 5, 1934.

---

[1] United States District Court for District of Hawaii.

858

George E. H. Goodner, of Washington, D. C., for plaintiff.

J. W. Blalock, of Washington, D. C., and Frank J. Wideman, Asst. Atty. Gen., for the United States.

Before BOOTH, Chief Justice, and GREEN, LITTLETON, WILLIAMS, and WHALEY, Judges.

WHALEY, Judge.

The Bay City Fuel Company was organized February 1, 1919, by R. J. Milling and Noah Schwarz with an authorized capital stock of $100,000. When the company was organized Milling transferred to it two barges at a valuation of $65,000 and received stock of the company to that amount. The only assets which the company had to represent its invested capital were these barges. Milling then sold to Schwarz 100 shares of his stock for $10,000. The company borrowed from Milling $10,000 and gave its note to him.

The sole question in this case is the value to be given the barges for invested capital

purposes. The plaintiff is suing to recover income and excess profits taxes for the years 1919, 1920, and 1921.

The plaintiff claims that, at the time the barges were taken over by the corporation and stock issued in payment for them, their actual cash (market) value was $65,000 (the evidence sustains this contention), and that the right to recover is based on section 326 (a) of the Revenue Acts of 1918 and 1921 (40 Stat. 1092 and 42 Stat. 274) which read as follows: "Sec. 326. (a) That as used in this title the term 'invested capital' for any year means: * * *

"(2) Actual cash value of tangible property, other than cash, bona fide paid in for stock or shares, at the time of such payment. * * * *"

No stock other than that given in payment for the barges was issued. Milling was president, and Schwarz, secretary and treasurer. The company was organized and the transfer of the barges for stock took place after March 3, 1917. Milling was, from the organization of the company, the owner of more than a majority of the stock. The facts, as found by the court, show that Milling purchased these two barges from the Pratt Consolidated Coal Company for the sum of $20,000. It is true that in the contract of purchase there were other undertakings on his part but he also received other valuable concessions from the Pratt Company. However, be that as it may, these other rights and undertakings were not assigned to the company and the evidence fails to show any actual cash value attached to them, so these intangibles are out of the picture.

It may be added that the plaintiff in its brief relies solely on "two coal barges which were paid into the plaintiff corporation for $65,000 par value of its capital stock at the time of its formation."

The defendant does not deny that the barges were worth $65,000 at the time they were acquired by the plaintiff and more than a majority of the stock given in exchange for them to Milling. However, the defense is made that where tangible property is taken in exchange for stock after March 3, 1917, in a corporation and the owner of the property so exchanged for stock has an interest or control in such property of 50 per cent. or more,

then the value of the property turned into the company for stock shall be taken at the cost of acquisition to the former owner.

The excess profits tax was only imposed on corporations and, in arriving at the real tax due, one of the primary elements on which it is based is the invested capital of the corporation—the larger the invested capital, the smaller the excess profit tax, and the smaller the invested capital, the larger the excess profit tax—therefore, the establishment of the amount of the invested capital is of primary importance. In order to prevent the inflationary values of property, due to the war, from being capitalized by the organization of a corporation and a transfer of the property to the company at prevailing market prices, section 331 was added to the 1918 and 1921 acts (40 Stat. 1095, and 42 Stat. 276), which reads: " * * * In the case of the * * * change of ownership of property, after March 3, 1917, if an interest or control in such * * * property of 50 per centum or more remains in the same persons, or any of them, * * * if such previous owner was not a corporation, then the value of any asset so transferred or received shall be taken at its cost of acquisition (at the date when acquired by such previous owner) with proper allowance for depreciation. * * * *"

When the stock was issued to Milling in exchange for the two barges, he acquired an interest or control of over 50 per centum in the property of the corporation. He never parted with a majority interest or control. When such a transfer of assets takes place, it does not matter what the market value of the assets at the time may be, for the taxing act regulates when and how the value of the assets for invested capital purposes is to be ascertained. In this case the invested capital of the plaintiff was the acquisition cost of the barges when they were transferred from the Pratt Consolidated Coal Company to Milling. See Keen & Woolf Oil Company v. Commissioner (C. C. A.) 49 F.(2d) 45.

In our opinion the Commissioner was correct in arriving at the invested capital of plaintiff to allow only the cost to the previous owner and not the cash value at the time of the transfer to the corporation.

The petition is dismissed. It is so ordered.